## ZACK v. KRALL ET AL.

1. **Conveyance**: MISTAKE OF SCRIVENER: ONE NOT MISLED CANNOT PROFIT BY. Where land was conveyed by deed of general warranty, except that it was recited therein that the grantee would support the grantor and wife, and give them a home on the land during their lifetime, and that the deed was made subject to a certain mortgage, the amount of which was stated at $900, which the grantee assumed and agreed to pay, but the mortgage was in fact for a much less sum, and there was another mortgage upon the land, and the aggregate amount of the two mortgages was only $900, and the evidence shows that it was the intention of the parties to make the deed subject to the two mortgages, but that the scrivener had by mistake failed to specify one of the mortgages, and the mortgage not so specified was afterwards foreclosed, and the land sold, and afterwards redeemed by the grantor in said deed, *held* that the grantee could not claim that such redemption inured to his benefit, upon the ground that the grantor was bound to protect his title against the mortgage not named in the deed; but that, upon a cross-petition, the court rightly corrected the deed so as to make it express the real contract between the parties.

*Appeal from Winneshiek District Court.*

MONDAY, JUNE 9.

ACTION IN EQUITY. The facts are sufficiently stated in the opinion. Decree for the defendants, and plaintiff appeals.

*Brown & Portman*, for appellant.

*L. Bullis*, for appellee.

SEEVERS, J.—The undisputed facts are that plaintiff is the widow of one Maresh, who was the son of the wife of the defendant, John Krall. In 1872 the latter was the owner of certain real estate, which was encumbered with two mortgages for about nine hundred dollars. Krall and wife conveyed said premises to Maresh by warranty deed, except that it was stated therein as follows: "This deed is given subject to a certain mortgage, dated Feb. 12, 1870, executed by John Krall and wife to John Larson, and assigned to C. Deckerman, on which

mortgage there is a balance due of nine hundred dollars." At the same time, and in consideration of the conveyance, Maresh agreed and contracted "to support and maintain said John Krall and wife during their natural life, by paying them a yearly rent of * * * * and a room in the dwelling house. For the performance of this agreement it is agreed that it shall be a perpetual lien upon said land."

It will be observed that the exception in the conveyance mentions only one mortgage, while the fact is that there were two, one of which was known as the Larson mortgage to one Ingler, and the other owned by Dickerman. The Larson mortgage was foreclosed after the death of Maresh, and the plaintiff was made a party to the action. The premises were sold by the sheriff under the decree of foreclosure, and the plaintiff failed to redeem, but the defendant, Krall, did, and the premises were conveyed by the sheriff to Broome, from whom Krall obtained the money to redeem.

The plaintiff brought this action to restrain the defendants from obtaining possession of the real estate, on the theory, as we understand, that Krall, under his warranty deed, was bound to protect the title, and that the redemption made by him enured to the benefit of the plaintiff as widow and one of the heirs of Maresh.

The defendants, in a cross-petition, pleaded that the contract was that Maresh was to pay both mortgages, or took the title subject thereto, and that by mistake the scrivener had failed to specify or describe one of the mortgages in the conveyance; and the relief asked in the cross-petition is that the mistake be corrected. Such relief was granted, and the principal contention between the parties is whether the court erred in so doing.

We have each read the evidence, and separately reached the conclusion that it did not. We do not deem it necessary, and it is not usual, to state the evidence or our reasons at length; but we desire to say briefly, that it seems to us that the defendant, Krall, would not likely have made the conveyance

for the purposes he did, without providing that Maresh should pay the mortgages, or take the land subject thereto, and thus relieve him from personal liability. Besides, both mortgages amounted to the sum named in the conveyance. The Dicker--man mortgage was for a much less sum. Maresh made payments during his lifetime on the mortgage not named in the conveyance, and on more than one occasion acknowledged that he was to pay it, and the plaintiff had knowledge of this fact. This conduct is so entirely inconsistent with the theory and claim of the plaintiff, that we feel constrained to say that it cannot be true; and, when all the evidence is considered, the preponderance is clearly, in our opioion, in favor of the theory of the defendants. In reaching this conclusion, we have not considered the evidence of the defendants who testified to personal transactions and conversations with Maresh.

It is said, no relief can be granted the defendants because of the negligence of Krall when the deed was executed. He testified that he did not read or hear the deed read. But in this we are satisfied he is mistaken, because at least two disinterested witnesses testify that it was read to him. We, however, feel satisfied that he did not understand its scope and effect, because of his inability to understand our language. He is a Bohemian, and an interpreter was called to explain what was desired, and the contents of the conveyance were made known to Krall by the interpreter. It is not, therefore, strange that the mistake occurred.

In her answer to the cross-petition, the plaintiff asked, if the mistake was established, that she be allowed to pay off the "incumbrance and keep the land, subject to the life lease, or that some order be made in the premises that shall be equitable." We incline to think that the plaintiff should have expressed at least a willingness to pay the amount found due, and that on this ground the relief asked was properly refused. But, be this as it may, we think the plaintiff should have redeemed from the sale under execution, and, having failed to

do so, the equities are not so persuasive as to authorize us to grant such relief.

AFFIRMED.